UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                :
ISMAEL FELICIANO,                     :

                     Petitioner,     :     17-cv-0914 (KBF)
                                            :     14-cr-0815 (KBF)
         -v-                            :
                                            :     OPINION & ORDER
UNITED STATES OF AMERICA,        :

                     Respondent.   :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

     Ismael Feliciano, currently incarcerated at U.S.P. McCreary, brings a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Camacho was sentenced on January 26, 2016 to 144 months of incarceration for interference with commerce by threat or violence under 18 U.S.C. § 1951 (Hobbs Act robbery conspiracy) ("Count I") and for conspiracy to distribute narcotics under 21 U.S.C. § 846 ("Count II"). Feliciano, acting pro se,[1] puts forth four bases for his petition: actual innocence; ineffective assistance of counsel; entrapment; and vagueness under Johnson. For the reasons set forth below, the petition is DENIED.

---

[1] The Court applies a "liberal construction of [pro se] pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Nevertheless, a Court may dismiss a petition under § 2255 without directing the United States attorney to file a response or holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255); Fed. R. Governing Sec. 2255 Proceedings for the U.S.D.C. 4(b) ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."). Here, the petition raises no factual dispute and can thus be resolved without a Government response and/or hearing.

I. BACKGROUND

In July 2014, the Drug Enforcement Administration ("DEA") began investigating a large quantity drug dealer in Philadelphia, Alex Velez. (Pre-Sentence Investigation Report ("PSR") ¶¶ 20-21.) A cooperating witness ("CW") and a confidential information ("CI") initially attempted to engage Velez in heroin and cocaine transactions. (Id. ¶ 21.) While no drug deal resulted, these conversations evolved into a plan to rob a drug supplier in New York—a "sting" investigation set up by the DEA. (Id.)

The CW and CI met Velez in New York on September 26, 2014, where they told him that that the drug supplier owed them money and they wanted Velez's help in recuperating that money. (Id. ¶ 22.) They explained that, according to a woman who worked for the supplier, a large shipment of narcotics would arrive in the coming weeks. (Id.) The CW and CI asked Velez to assist in robbing the narcotics from the supplier's workers; Velez agreed immediately and responded that he knew individuals who would help commit the robbery. (Id.)

Velez returned to Philadelphia and recruited Miguel Delacruz to be the driver. (Id. ¶¶ 23-26.) A few days before the robbery, Velez encountered Eduardo Vasquez-Torres, who Velez knew had been involved in selling drugs and who Velez believed had been incarcerated for distribution for about twenty years. (Id. ¶ 29.) Vasquez-Torres asked to include a friend, Ismael Feliciano, the petitioner here; Velez agreed, noting that he trusted Feliciano because he had been in prison with Vasquez-Torres's brother. (Id. ¶ 30.)

2

On November 13, 2014, Vasquez-Torres and Feliciano met up with Velez as a gas station and told him that they had brought two guns. (Id. ¶ 31.) They departed in two cars for New York City. Velez, Delacruz, and Giovanny Falero were in a Buick; Vasquez-Torres, Feliciano, and Vasquez-Torres's girlfriend were in a Dodge. (Id. ¶ 32.) Pursuant to a court-ordered geolocation warrant for Velez's cell phone, law enforcement agents tracked Velez's movements, and at least twice along the route, law enforcement agents conducting surveillance observed the cars driving northbound. (Id.) The cars arrived in New York City at approximately 7:20 p.m. (Id. ¶ 33.) Over the next hour or so, Velez spoke with the CW and the CI several times, and the cars ultimately drove to 125th Street, east of 12th Avenue, where Falero asked the CW and the CI whether it would be okay to harm the two drug dealers they intended to rob. (Id. ¶ 34.) The CW and the CI stated that it would be fine as long as they did not harm the woman who was expected to be accompanying the drug supplier targets; Delacruz responded that they would harm the main target drug supplier. (Id.)

At 8:28 p.m., the DEA gave the signal to the CW and the CI to bring the crew to the anticipated location of the robbery. (Id. ¶ 35.) A few moments later, Velez appeared to be on his phone, looking back towards Broadway, and he waived his hand in the air as if summoning someone. (Id.) A dark Toyota Camry, livery cab then drove up and parked behind the Buick. Another individual, Riphy Esquea-Marte exited the rear set of the Camry Cab carrying a black bag, and handed the bag to Velez, who knew that there was a firearm in the black bag (as he had

3

previously discussed with Esquea-Marte that he should obtain a firearm).  (Id.) Velez and Esquea-Marte then proceeded to walk westbound on l25th Street, in the direction of the parked Dodge; Falero followed suit.  (Id.)

While Velez, Esquea-Marte, and Falero approached the Dodge by foot, the CI reentered the vehicle he in which he had arrived, and the CW and CI proceeded to drive westbound on l25th Street followed by the Buick and the Camry Cab.  (Id.) The CI and CW's vehicle made a right onto 12th Avenue, going northbound, with the Buick and the Camry Cab following behind.  (Id.)  At approximately 8:45 p.m., law enforcement officers stopped the Buick and the Camry Cab in the vicinity of 131st Street and proceeded to arrest the defendants.  (Id. ¶ 36.)  Feliciano remained in the parked Dodge with Vasquez-Torres; a subsequent search of the Dodge uncovered a Rossi, .38-caliber revolver (which had been reported stolen in Pennsylvania) from the center console, a loaded Ruger 9-mm semiautomatic handgun in between the driver's seat and the center console, gloves, masks, and a large knife.  (Id. ¶ 38.)  The DEA also uncovered a loaded Lorcin 380 semiautomatic weapon inside a black bag Velez had tossed over a fence before he was placed under arrest.  (Id. ¶ 39.)

On the next day, November 14, 2014, Steven Frankel was appointed as Feliciano's counsel, pursuant to the Criminal Justice Act.  Feliciano had an initial appearance before Magistrate Judge Netburn on November 14, 2014 and an indictment was filed on December 11, 2014.  (ECF No. 25.)  He was arraigned before the undersigned on December 16, 2014 and he pled not guilty.

4

On August 11, 2015, Feliciano consented to a magistrate judge presiding over his change of plea hearing, (ECF No. 64); accordingly, that day, Magistrate Judge Francis held a hearing and Feliciano pled guilty under oath to Hobbs Act robbery and conspiracy to manufacture, distribute, or dispense a controlled substance (ECF No. 70, Plea Tr. at 4:18-5:15.) At that hearing, the Government explained the elements of each crime, including that Count II requires that the defendant "knowingly became a member of [a] conspiracy" to "distribute a controlled substance or to possess a controlled substance with the intent to distribute it." (Id. at 12:13-21.) The defendant reaffirmed his guilt and that "somebody asked [him] to come to New York to rob a drug dealer and [he] agreed to." (Id. at 13:13-16.)

On January 25, 2016, this Court sentenced Feliciano to 144 months' imprisonment.[2] At that hearing, the Court determined that his criminal history category was VI and that the offense level was 31. (ECF No. 146, Sen. Tr. at 7:15-16.) As to the career offender guideline, the Court noted that it was "[w]ithout the need to reference the career offender provision set forth in the guidelines, which under certain circumstances may raise a defendant's criminal history category if it's lower than VI to VI, here he's a VI anyway, so the career offender provisions don't move the dial in any material way." (Id. at 6:18-23.) Feliciano is now serving his sentence at U.S.P. McCreary.

---

[2] This occurred after the Court held an evidentiary hearing on November 19, 2015, in order to better understand each defendant's role in the conspiracy. (ECF No. 102, Order.) While the hearing was directed at Delacruz and Falero's participation, (see id.), Feliciano and his attorney were present, (ECF No. 109, Nov. 19, 2015 Hearing Tr. at 3:17-19.) The hearing does not present any issues that are material to Feliciano's petition.

5

II. LEGAL PRINCIPLES

A. Summary Dismissal

The Court is required to promptly examine a motion under 28 U.S.C. § 2255, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 4(b) (emphasis added); see 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney . . . .").

In determining whether summary dismissal is appropriate, the Court must "take into account admissions made by the defendant at his plea hearing, for '[s]olemn declarations in open court carry a strong presumption of verity.'" Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). "The critical question is whether these allegations, when viewed against the record of the plea hearing, were so palpably incredible, so patently frivolous or false, as to warrant summary dismissal." Blackledge, 431 U.S. at 76 (internal quotations omitted).

B. Actual Innocence

The Carrier standard [for actual innocence claims] requires the habeas petitioner to show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' To establish the requisite probability,

6

the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). Accordingly, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324.

      C. Ineffective Assistance of Counsel

Feliciano argues that his counsel was ineffective for failing to advise him: (1) that a conspiracy conviction requires that he was in agreement his co-conspirators; and (2) of the entrapment defense before he pled guilty.

To prevail on a claim of ineffective assistance of counsel, Feliciano "must [first] show that counsel's representation fell below an objective standard of reasonableness," as measured against "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). In addition, he must demonstrate that counsel's "deficient performance prejudiced the defense," id. at 687, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

As to the first prong of Strickland, attorney conduct is subject to an objective standard of reasonableness, and is accorded deference in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel. Id. at 688-89. As a result, reviewing courts "must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (alterations and internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689).

As to the second prong of Strickland, a petitioner must show that, but for his or her attorney's deficient performance, there is a reasonable probability that the result would have been different. Strickland, 466 U.S. at 694. More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693.

Under Strickland, "strategic choices made [by counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. 466 U.S. at 690–91. "Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 689). A "lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." Greiner v. Wells, 417 F.3d 305, 319 (2d

8

Cir. 2005) (quoting DeLuca v. Lord, 77 F.3d 578, 588 n.3 (2d Cir. 1996)). "The likelihood that an affirmative defense will be successful at trial and an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial are clearly relevant to the determination of whether an attorney acted competently in recommending a plea." Panuccio v. Kelly, 927 F.2d 106, 109 (2d Cir. 1991).

### D. Entrapment

To successfully assert an entrapment defense, a defendant must demonstrate, by a preponderance of the evidence, "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part." United States v. Bala, 236 F.3d 87, 94 (2d Cir. 2000) (quoting United States v. Salerno, 66 F.3d 544, 547 (2d Cir. 1995)). "A defendant is predisposed to commit a crime if he is 'ready and willing without persuasion' to commit the crime charged and 'awaiting any propitious opportunity' to do so." Salerno, 66 F.3d at 547 (quoting United States v. Harvey, 991 F.2d 981, 992 (2d Cir. 1993)). Predisposition may be shown by evidence of "(1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." Salerno, 66 F.3d at 548 (quoting United States v. Valencia, 645 F.2d 1158, 1167 (2d Cir. 1980)).

E. <u>Void for Vagueness under Johnson</u>

In 2015, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") violates the Constitution's guarantee of due process because it is unconstitutionally vague. <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015). The clause at issue defined "violent felony" to include any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." <u>Id.</u> at 2555 (quoting 18 U.S.C. § 924(e)(2)(B)). The Court determined that the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." <u>Id.</u> at 2557. If a statute is held to be void for vagueness, then a criminal defendant may have his or her conviction overturned. <u>See, e.g.</u>, <u>id.</u>

However, two years later in <u>Beckles v. United States</u>, 137 S. Ct. 886 (2017) (and after Feliciano had submitted the instant petition), the Supreme Court held that identical language in the Sentencing Guidelines is not subject to a void for vagueness challenge.

III. DISCUSSION

As explained in more detail below, the Court finds that summary dismissal is appropriate, as petitioner has not raised a question of fact; in addition, in the face of his "solemn declarations in open court," his claims here cannot succeed. <u>Gonzalez</u>, 722 F.3d at 131.

10

A. <u>Actual Innocence</u>

Petitioner offers no new evidence to support the implied assertion that "'no reasonable juror would have found' [him] guilty." <u>Id.</u> (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 336 (1992)). Instead, he cites testimony from the November 19, 2015 <u>Fatico</u> hearing held by the Court to ultimately argue that he never conspired to distribute narcotics. However, defendant pled guilty to Count II, and he confirmed his plea after hearing from the Government that an element of Count II was that he "knowingly <u>became a member</u> of the conspiracy." (<u>Id.</u> at 12:13-21 (emphasis added).) Defendant cannot now claim he is innocent of this conduct after swearing under oath that he is guilty. As such, his petition cannot succeed on this ground.

B. <u>Ineffective Assistance of Counsel</u>

Broadly, Feliciano asserts that Mr. Frankel was ineffective for failing to explain that Count II required evidence of a conspiracy and that an entrapment defense might be available.

1. <u>Conspiracy</u>

Feliciano claims that his counsel did not explain to him that a count of conspiracy requires that he was "in agreement with Mr. Marte, Delacruz, Gi[a]vanny to distribute narcotics in Philadelphia after robbery." (ECF No. 1, Pet. at 5.) Assuming <u>arguendo</u> that Mr. Frankel did not explain this to Feliciano, his claim still cannot succeed. First, the Government explained Count II in open court to Feliciano, after which he affirmed his guilt. (Plea Tr. at 13:13-16.) Second, Feliciano does not allege that he would not have pled guilty had he known this; nor

11

does he submit a sworn affidavit supporting his assertions. As such, he has failed to demonstrate that any prejudice may have occurred as a result of Mr. Frankel's alleged ineffectiveness.

2. Entrapment

The record in this case—both in terms of the DEA's evidence and Feliciano's statements in court—demonstrates that Feliciano was willing to serve as part of a crew that would rob purported narcotics traffickers, and that he was trusted to do so by Velez, the leader of the conspiracy. Indeed, he admitted to this conduct when he pled guilty. Conversely, there is <u>no</u> evidence in the record to support the availability of an entrapment defense, and Feliciano has not presented any evidence of entrapment in connection with his petition. Given the record and the low likelihood of success for asserting such a defense, Frankel's decision not to inform Feliciano of the entrapment defense was reasonable. To put it another way, it was reasonable for Feliciano's counsel to conclude that his client had shown the requisite "willingness to commit the crime." <u>Salerno</u>, 66 F.3d at 548.[3]

Decisions by Feliciano's counsel not to inform his client of the defense's availability thus survive <u>Strickland</u>, especially in light of the fact that the entrapment defense is risky and rarely successful. <u>See, e.g.</u>, <u>United States v. Balis</u>, Nos. 08-cv-5637, 03-cr-1028, 2009 WL 1117274, at *6 (S.D.N.Y. Apr. 24, 2009) (noting that the entrapment defense is risky because it "in effect admits that the

---

[3] For this reason as well, Feliciano's third ground for relief fails, as defendant has not demonstrated by a preponderance of the evidence that there was a lack of predisposition on the [his] part." <u>United States v. Bala</u>, 236 F.3d 87, 94 (2d Cir. 2000).

12

defendant engaged in criminal conduct, and attempts to explain away the commission of criminal acts," and generally "dilute[s] the force of a denial of wrongdoing").

In any event, even assuming Feliciano were able to show that his attorney's conduct was somehow deficient, he fails to show that he suffered prejudice as required under Strickland. "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). As explained above, in light of the record here, it is unlikely that Feliciano would have been entitled to a jury instruction on entrapment, let alone that he would have succeeded on either defense at trial.

    C.  Void for Vagueness under Johnson

Finally, Feliciano argues that he was improperly subjected to an enhancement under the Sentencing Guidelines § 4B1.1 (the "Career Offender Guideline"), as the language therein is void for vagueness. As the Supreme Court has recently held that the Guidelines are not subject to a void for vagueness challenge, the petition does not succeed on this ground, either. As the Supreme Court has ruled that the Career Offender Guideline is not subject to a void for vagueness challenge, Feliciano cannot succeed on this motion.[4]

---

[4] It is also possible to read Feliciano's fourth ground as an argument that the § 4B1.1 enhancement was improperly applied because his prior convictions were nonviolent. Feliciano's prior convictions include: five convictions for possession with intent to manufacture or deliver controlled substances;

13

IV.  CONCLUSION

For the reasons set forth above, Feliciano's motion under 28 U.S.C. § 2255 is DENIED.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012). The Court also finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the denial of this motion would not be taken in good faith. See Feliz v. United States, No. 01 Civ. 5544 (JFK), 2002 WL 1964347, at *7 (S.D.N.Y. 2002).

The Clerk of Court is directed to close the motion at ECF No. 165 in 14-cr-0815 and to terminate the action at 17-cv-0914.

SO ORDERED.

Dated:   New York, New York
         March 16, 2018

_____
KATHERINE B. FORREST
United States District Judge

---

one conviction for possession of a controlled substance; one conviction for involuntary deviant sexual intercourse; and one conviction for corruption of a minor. (PSR ¶¶ 68-74.) Section 4B1.1 advises that a defendant is a career offender if: "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Feliciano has six convictions for controlled substance offenses and the convictions in this case are a crime of violence (Hobbs Act robbery), see United States v. Hill, 832 F.3d 135 (2d Cir. 2016), and a controlled substance offense. As such, the enhancement was properly applied.

14

Copy to:
Ismael Feliciano
71659-054
USP McCreary
U.S. Penitentiary
P.O. Box 3000
Pine Knot, KY 42635